NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY PROTECTION AND ADVOCACY, INC.<br><br>             Plaintiff,<br><br>    v.<br><br>JAMES DAVY, in his Official Capacity as Commissioner of the Department of Human Services<br><br>             Defendant. | CIVIL NO. 05-1784 (SRC)<br><br>OPINION |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendant James Davy (docket entry # 6).  This Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, DENIES Defendant's Motion.

**I. BACKGROUND OF THE CASE**

This case was filed by New Jersey Protection and Advocacy, Inc. ("NJP&A") on behalf of approximately one thousand individuals who are currently confined in psychiatric hospitals in the state of New Jersey.  NJP&A seeks to compel the Defendant, in his capacity as Commissioner of the New Jersey Department of Human Services, to provide community

placements for individuals currently residing in state psychiatric hospitals that have been adjudicated by the state Superior Court as no longer meeting the standards for civil commitment. Under New Jersey law, the State may exercise its *parens patriae* power to continue confinement of these persons while the State develops an appropriate community placement for them, under a special status known as Conditional Extension Pending Placement ("CEPP"). See In Re S.L., 94 N.J. 128 (1983).  NJP&A alleges that the State has used this CEPP status to confine individuals for excessive periods of time and has failed to implement an effective plan for discharging these individuals into the community.

NJP&A is a non-profit, federally funded agency that has been designated under federal statute to serve as a protection and advocacy system for people with disabilities in the state of New Jersey.  Under this statute, NJP&A has the authority to pursue legal, administrative, and other appropriate remedies to ensure the protection of individuals with mental illness who are or will be receiving treatment in New Jersey.  See 42 U.S.C. § 10801 et. seq.  NJP&A is pursuing this action as an advocate for persons suffering from mental illnesses.  They are seeking equitable remedies to secure the timely release of psychiatric patients who may have been wrongfully detained by the State, and to prevent future patients from allegedly wrongful detentions.

## II. MOTION TO DISMISS

The Defendant, pursuant to Fed. R. Civ. P. 12(b)(6), filed a motion to dismiss the Plaintiff's claims.  In their brief, the Defendant raised three points to contest the Plaintiff's claims: (1) that the Plaintiff lacked constitutional standing to assert claims on behalf of its constituents; (2) that Commissioner Davy is immune from suit under Title II of the ADA and

Section 504 of the Rehabilitation Act; and (3) that Commissioner Davy, acting in his official capacity, is not a "person" for the purposes of 42 U.S.C. § 1983. The Court will address each of the Defendant's claims in turn.

**A.     The Plaintiff Has Sufficient Standing to Assert Claims on Behalf of its Constituents**

The Constitution and the courts have imposed requirements for plaintiffs to have proper standing to bring suits in order to ensure that a plaintiff possesses "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204 (1962). Associational standing may permit an organization to redress injuries to its members, even without a showing of any injury to the organization itself. United Food and Commercial Workers Union v. Brown Group, Inc., 517 U.S. 544, 552 (1996).

Recognizing that "individuals with mental illness are vulnerable to abuse and serious injury," Congress enacted the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAMII") to "ensure that the rights of individuals with mental illness are protected" and to assist states in establishing advocacy systems to "protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes." 42 U.S.C. § 10801(a)(1), (b)(1), (b)(2)(A). PAMII expressly grants protection and advocacy groups, such as NJP&A, standing to pursue legal remedies on behalf of individuals with disabilities for violations of their rights. 42 U.S.C. § 10805(a)(1)(B). See also Senate Report 103-120, 103rd Congress, 1st Session, pp. 39-40 (August 3, 1993) (reprinted at 1994

U.S.C.C.A.N. 164, 202-203).  Despite this express Congressional grant, however, NJP&A must still satisfy Article III's Constitutional requirements to attain standing to sue on behalf of its constituents.  See United Food, 517 U.S. at 558.  See also Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1109 (9th Cir. 2003) (noting that PAMII "cannot override constitutional standing requirements").

The Supreme Court has set out three requirements for an associational plaintiff like NJP&A to have standing under Article III to sue on behalf of its members: (1) its members must have standing to sue on their own; (2) the interests it seeks to protect must be germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit.  Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

The Defendant does not challenge that NJP&A, given their organizational purpose, meets the requirements of the second prong, namely that its interests of protecting wrongfully detained psychiatric patients is germane to the organization's purpose.  The third prong of the test is not constitutionally required, but rather a matter of judicial prudence.  United Food, 517 U.S. at 558.  As such, it may be abrogated by Congress under a statute granting standing to an organization.  Id.  The Defendant does not contest that Congress' statutory grant to NJP&A eliminates this third requirement in the present case.

The Defendant's challenge is based on a claim that NJP&A does not meet with the requirements of the first prong of the Hunt.  (Def. Reply Br. at 3.)  They assert two claims to support their argument: (1) the implied plaintiffs in this case are not "members" of NJP&A, and (2) even if they were members of NJP&A, they would lack standing to bring a suit in their own

4

names.  (Id. at 2-3.)

A.      *NJP&A's Constituents are "Members" for Associational Standing Purposes*

The Plaintiff contests NJP&A's standing on the basis that, as a federally funded organization, their constituents "play absolutely no membership role in the organization." (Def.'s Br. at 8.)  In support of their position, the Plaintiff cites to the Fifth Circuit holding in Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Bd. of Trustees, 19 F.3d 241 (5th Cir. 1994), where the Court held that a federally-funded Texas advocacy group did not satisfy the first prong of the Hunt test for associational standing on the grounds that its constituents were not members of the group.  Id. at 244 (noting that "[t]he organization [bore] no relationship to traditional membership groups because most of its 'clients' . . . [were] unable to participate in and guide the groups efforts.")  This Court, however, finds the Fifth Circuit's approach in this case to be excessively rigid and formalistic for such a constitutional analysis.  This Court is more persuaded by the approach of the Eleventh and Ninth Circuits in finding that persons with mental illness are the functional equivalent of members of PAMII organizations like NJP&A for purposes of associational standing.  See Oregon Advocacy Center, 322 F.3d at 1110 (holding mentally incapacitated persons "the functional equivalent of members [of a PAMII organization] for purposes of associational standing"), Doe v. Stincer, 175 F.3d 879, 886 (11th Cir. 1999) (holding PAMII organization "may sue on behalf of its constituents like a more traditional association may sue on behalf of its members").

The individuals whose rights NJP&A is seeking to vindicate bear sufficient indicia of membership in NJP&A to satisfy the first prong of the Hunt test for associational standing.

NJP&A is an advocacy group on behalf of disabled individuals, including the mentally ill, within the state of New Jersey. These individuals are the direct and primary beneficiaries of NJP&A's activities, "including the prosecution of this kind of litigation." Hunt, 432 U.S. at 344.

Although NJP&A derives its funding from the federal government, its constituents remain involved in all levels of the organization. Pursuant to federal law, the chairperson and at least 60% of the membership of NJPA's Advisory Council, which guides the Association's policies and procedures, is "comprised of individuals who have received or are receiving mental health services or family members of such individuals." 42 U.S.C. § 1085(a)(6)(B). Federal law also requires similar participation of persons who are receiving mental health services or their family members on NJP&A's Board of Directors, id. at § 1085(c)(2)(B), and these individuals currently comprise a majority of NJP&A's Board. (Sara Mitchell Affidavit at ¶ 7.) Additionally, constituents have access to a direct grievance procedure, pursuant to federal law, to make their voice further heard within the organization. 42 U.S.C. § 1085(a)(9).

Like members of a traditional organization, NJP&A's constituents have the power to exert significant influence over the Association's priorities and activities. See Stincer, 175 F.3d at 886. NJP&A's statutorily mandated interests also give it a shared interest in the outcome of this litigation. These factors are sufficient to satisfy this Court that NJP&A's constituents have sufficient indicia of membership to justify NJP&A's associational standing in this case.

B.     *NJP&A's Members Have Standing to Sue in Their Own Right*

Having satisfied the requirement that NJP&A's constituents are the functional equivalent of members, Hunt also requires that at least one of NJP&A's constituents would have had

"standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." United Food, 517 U.S. at 555.  The Plaintiffs have presented, in their complaint, two examples of individuals they purport to represent who, according to their claims, have suffered tangible injury as a result of the Defendant's actions.  (Complaint at ¶¶ 33-41.)  Additionally, they have put forth a general allegation that nearly 50% of the individuals currently in New Jersey psychiatric hospitals are on CEPP status, but remain in restrictive institutionalized care.  (Complaint at ¶ 24.)  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).  Accordingly, the Court is satisfied that the Plaintiff has sufficiently demonstrated, for purposes of evaluating the Defendant's motion for dismissal, that at least some of their members have standing to sue in their own right - thereby satisfying the first requirement of Hunt and conferring associational standing upon NJP&A.

**B.     The Defendant is Not Immune from Suit Under the Eleventh Amendment**

While the Eleventh Amendment provides general immunity to states from suits brought by citizens in federal court, it is well established that citizens may bring suits to enjoin state officials, acting in their official capacity, from violating the Constitution or laws of the United States.  Ex parte Young, 209 U.S. 123, 155-56 (1908).  In their opposition brief, Plaintiffs voluntarily withdrew their claims seeking monetary penalties against the Defendant, leaving only claims for injunctive relief.  (Pl.'s Br. at 18.)  On this basis, the Defendant, in their reply brief,

withdrew their challenge, conceding that the remaining claims against the State for prospective injunctive relief[1] fall squarely under the Ex parte Young doctrine, and are not barred by the Eleventh Amendment.  (Def. Reply Br. at 6.)

C.  **The Defendant is a Person for Purposes of 42 U.S.C. § 1983 Because the Plaintiff is Seeking Injunctive Relief Under the Ex Parte Young Doctrine.**

In their complaint, the Plaintiff alleges that the continued and indefinite restrictions on their constituent's liberties constitute a violation of their Due Process rights as enforceable under 42 U.S.C. § 1983.  (Complaint, Count I, ¶ 7.)  While the Plaintiff is suing an individual, Mr. Davy is being sued in his official capacity as Commissioner of Human Services for the State of New Jersey.  A suit, like this, against a state official, acting in their official capacity, is "no different from a suit against the State itself."  Defendants cite the Supreme Court in Will v. Michigan Dept. of State Police for their claim that a state, or a state official acting in their official capacity, is not a "person" under Section 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

Unlike the Plaintiff in Will, however, NJP&A is seeking solely injunctive relief.  As the Supreme Court in Will noted, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'"  Id. at 71 (citing Kentucky v.

---

[1] The Plaintiff is also seeking attorney's fees for the prevailing party as part of their claims.  The Defendant, in their reply brief, has withdrawn their claim that such costs are barred by the Eleventh Amendment, but reserves their right to renew the argument in the event that the issue of awarding prevailing party costs are ever reached in this matter.  (Def. Reply Br. at 6.)

Graham, 473 U.S.159, 167 (1985), Ex parte Young, 209 U.S. 123, 159-60).  Accordingly, this Court finds that the Defendant, acting in their official capacity, is not immune from the Plaintiff's claims for injunctive relief under Section 1983.

### III. CONCLUSION

For the reasons stated above, and for good cause shown, the Court denies Defendant's Motion to Dismiss.  An appropriate form of order will be filed herewith.

Date:   September 30, 2005

    s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.